UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Randy S. Campney, Sr.</u>,
     Petitioner

     v.                                    Civil No. 06-cv-353-SM
                                           Opinion No. 2008 DNH 157
<u>Superintendent, Bare Hill
Correctional Facility</u>,
     Respondent


**O R D E R**


     Randy Campney, an inmate at the Bare Hill Correctional
Facility in Malone, New York,[1] petitions for a writ of habeas
corpus.  28 U.S.C. § 2254.  Before the court is respondent's
motion for summary judgment.  Petitioner objects.  For the
reasons given, respondent's summary judgment motion is granted in
part and denied in part.


**Background**

     After a jury trial in the New Hampshire Superior Court
(Hillsborough County), Campney was convicted of two counts of
burglary and one count of theft by unauthorized taking.  Those
charges arose from break-ins at two businesses in Greenville, New
Hampshire, that occurred during the early morning hours of April

---

     [1] Petitioner is serving sentences for several New Hampshire
crimes concurrently with a criminal sentence imposed by the State
of New York.

13, 2002.[2]  At the time of the crimes, Campney was on work
release from a New York correctional facility.

Campney appealed his convictions to the New Hampshire
Supreme Court, which affirmed.  After that appeal was filed, but
before it was decided, Campney filed a motion to set aside the
verdicts, which the trial court treated as a motion for a new
trial, and denied.[3]  Campney appealed that decision, and the New
Hampshire Supreme Court declined to accept the appeal.

Subsequently, Campney petitioned this court for a writ of
habeas corpus.  On preliminary review, the magistrate judge
narrowed Campney's petition to include the following grounds for
relief:

> 1.   violation of the Interstate Agreement on Detainers
>      ("IAD"), when the trial court failed to appoint
>      defense counsel in accordance with the IAD, and
>      the delay prevented a proper defense and discovery
>      (original Ground 3(e));
>
> 2.   denial of due process when Campney was denied
>      timely discovery, including exculpatory evidence,
>      and was forced to obtain this evidence through

---

[2] Campney was also convicted of similar charges in Grafton
County, and the constitutionality of those convictions is at
issue in a separate habeas corpus petition in this court, No. 06-
cv-297-JD.

[3] This court will follow the trial court in referring to
that pleading as petitioner's motion for a new trial.

administrative and civil proceedings (original
Ground 4);

3.    denial of effective assistance of trial counsel
      arising from counsel's failure to obtain
      exculpatory evidence (original Ground 5);

4.    denial of effective assistance of appellate
      counsel (original Ground 6);

5.    prosecutorial misconduct arising from the
      prosecution's failure to provide discovery and
      misleading the court (original Ground 7);

6.    denial of the right to a fair trial when the
      trial court "sought out a theory of arrest"
      that was not supported by the court record or
      set forth by the prosecution (original Ground
      8);

7.    the above-referenced trial errors denied
      Campney the right to cross examination, the
      right to effective assistance of trial and
      appellate counsel and the right to due
      process (original Ground 10).

In addition to eliminating several of petitioner's asserted

grounds for relief, the magistrate judge ruled that Campney had

not demonstrated exhaustion of his state court remedies, as

required by 28 U.S.C. § 2254(b)(1)(A).


     To meet the exhaustion requirement, Campney returned to the

trial court and filed a "Motion for Vacating Verdict and

Dismissal of Indictments" (hereinafter "motion to vacate").  The

record does not appear to include the State's response, if any,

to Campney's motion to vacate.  The trial court responded to

3

Campney's motion with a one-word margin order ("Denied"), and the
New Hampshire Supreme Court declined to accept Campney's appeal,
which served to exhaust Grounds 1 through 6.  In its order
declining Campney's appeal, the court cited New Hampshire Supreme
Court Rule 7(1)(B) and explained that all four justices
considering the notice of appeal voted not to accept it.  The
court did not expressly rely upon the Rule 7(1)(B) time bar as a
basis for declining Campney's appeal.

To exhaust Ground 7, Campney filed a notice of appeal in the
New Hampshire Supreme Court, which ruled that "to the extent this
appeal seeks to review any order of the superior court issued in
2004, 2005 or 2006, it is dismissed as untimely filed" (Resp't's
Answer, Ex. 7), and further ruled that "to the extent that the
defendant intended to file a petition for original jurisdiction
in this court, we dismiss the petition without prejudice to the
defendant's ability to seek relief from the superior court"
(id.).  Petitioner sought no further relief from the superior
court, but, rather, submitted the above-quoted supreme court
order to this court in support of his motion to lift the stay
imposed by the magistrate judge.

**The Legal Standard**

Federal habeas corpus relief may be granted "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly limited the power of the federal courts to grant habeas corpus relief to state prisoners.

When a petitioner's claim "was adjudicated on the merits in State court proceedings," id., a federal court may disturb a state conviction only when: (1) the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 399 (2000).

"AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings." Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini

v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); citing Ellsworth v.
Warden, 333 F.3d 1, 6 (1st Cir. 2003)).  "When the state court
has never addressed the particular federal claim at issue,
federal review is de novo."  Dugas v. Coplan, 506 F.3d 1, 7 (1st
Cir. 2007) (citing Pike v. Guarino, 492 F.3d 61, 67 (1st Cir.
2007)).  "As [the court of appeals for this circuit has] noted, a
federal court 'can hardly defer to the state court on an issue
that the state court did not address.'"  Dugas, 506 F.3d at 7
(quoting Fortini, 257 F.3d at 47).


## Discussion

Ground 1 (original Ground 3(e))

It appears that plaintiff was incarcerated in New York
during much (if not all) of the time between his arrest and his
trial.  He claims he is entitled to habeas corpus relief because
the trial court failed to appoint defense counsel in accordance
with the Interstate Agreement on Detainers, and that the delay in
appointment of counsel hindered discovery and prevented him from
receiving a proper defense.  Respondent argues that he is
entitled to summary judgment on Ground 1 on the basis of
procedural default.


"Normally, the fact that a claim is procedurally defaulted
in state court is an adequate and independent state ground

precluding federal habeas relief." <u>Walker v. Russo</u>, 506 F.3d 19, 21 (1st Cir. 2007) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991); <u>Gunter v. Maloney</u>, 291 F.3d 74, 79 (1st Cir. 2002); <u>Burks v. Dubois</u>, 55 F.3d 712, 716 (1st Cir. 1995)).  More specifically:

> A habeas claim is procedurally defaulted in either of two situations.  First, a claim is procedurally defaulted if the state court has denied relief on that claim on independent and adequate state procedural grounds.  <u>See Lambrix v. Singletary</u>, 520 U.S. 518, 522-23 (1997).  Second, a claim is procedurally defaulted if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred.  <u>See Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991); <u>Perruquet v. Briley</u>, 390 F.3d 505, 514 (7th Cir. 2004).

<u>Pike</u>, 492 F.3d at 73 (parallel citations omitted).

The state-court adjudication of Ground 1 presents a different situation from either of the two described in <u>Pike</u>. Petitioner did not advance his IAD argument in his original appeal to the New Hampshire Supreme Court, his motion for a new trial, or his appeal from the denial of that motion.  Rather, he first presented that argument to the state court in his post-petition motion to vacate.  But, because the trial court denied that motion without opinion, and the New Hampshire Supreme Court declined to accept petitioner's appeal from the trial court's order, it cannot be said that the state courts denied petitioner

7

relief based upon procedural grounds.  As the United States
Supreme Court explained in Harris v. Reed, "a procedural default
does not bar consideration of a federal claim on . . . habeas
review unless the last state court rendering a judgment in the
case 'clearly and expressly' states that its judgment rests on a
state procedural bar."  489 U.S. 255, 263 (1989) (quoting
Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)).  And, because
petitioner did present his IAD argument to the state court, in
his motion to vacate, the state courts' treatment of Ground 1
does not fit within the second Pike situation.

     Nonetheless, respondent argues that "it is beyond
peradventure that the state court based its decision [to deny
petitioner's motion to vacate] on [the] procedural bar" described
in Avery v. Cunningham, 131 N.H. 138 (1988).  In Avery, the New
Hampshire Supreme Court held "that the petitioner [was]
procedurally barred from raising the issue of his incompetency in
a habeas corpus proceeding because of his failure to raise the
issue on his direct appeal."  Id. at 142-43.  Indeed, Avery might
have supported denial of petitioner's motion to vacate, but no
state law (or any other) grounds were mentioned in the trial
court's order, and "[t]he mere existence of a basis for a state
procedural bar does not deprive [federal courts] of jurisdiction;
the state court must actually have relied on the procedural bar

8

as an independent basis for its disposition of the case."
Caldwell, 472 U.S. at 327 (citing County Court v. Allen, 442 U.S.
140, 152–154 (1979)).  Under other circumstances, such as if the
State had objected to petitioner's motion solely on procedural
grounds, an unexplained state court decision, such as the denial
of petitioner's motion to vacate, could be construed as a
decision based upon state procedural grounds.  See Coleman, 501
U.S. at 740.  But, respondent has not produced the State's
response to petitioner's motion to vacate, leaving this court no
basis in the record for finding a clear and express statement
that the state court denied petitioner's request for relief on
procedural grounds.  Absent some reliable indication that the
trial court ruling on petitioner's motion to vacate rested on a
procedural bar, respondent is not entitled to that defense.

     Respondent, in reliance on Bell v. Cone, 543 U.S. 447
(2005), asks this court not to lightly assume that the state
courts failed to properly apply Avery.  Bell, it must be noted,
did not involve a federal court's assumption about a state
court's failure to apply the relevant procedural default rule;
the issue in Bell was whether the Louisiana Supreme Court was
obligated to cite a particular authority on a point of
substantive law in order to be credited with properly applying
the rule stated by that authority.  Id. at 455.

More importantly, however, as the Supreme Court has explained: "State procedural bars are not immortal . . . they may expire because of later actions by state courts.  If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) (citing Harris, 489 U.S. at 262).  Here, without a plausible basis for concluding that the state courts considered anything other than the merits of the constitutional claims presented in petitioner's motion to vacate, the trial court's denial of that motion is construed as a decision on the merits, and as having revived petitioner's claims, even if they had otherwise been procedurally defaulted.  Accordingly, respondent is not entitled to summary judgment on Ground 1 on the basis of procedural default.

While neither side has engaged on the merits of the issue at this stage, the court notes that Ground 1 remains alive by the slightest of margins.  "[T]he IAD is considered federal law for purposes of habeas corpus." Cross v. Cunningham, 87 F.3d 586, 587-88 (1st Cir. 1996) (citing Reed v. Farley, 512 U.S. 339, 345-46 (1994)).  But, IAD "claims can be raised on habeas only if the alleged error results in a complete miscarriage of justice." Id. at 588 (citation and internal quotation marks omitted).

Petitioner's assertion that delayed appointment of counsel impaired his ability to prepare a defense is sufficient to avoid summary dismissal of Ground 1, see id., but barely.  As the case progresses, and as the record is further developed, petitioner will face "a substantial burden" in proving that the delayed appointment of counsel rendered his trial unconstitutionally unfair.  See id.

Ground 2 (original Ground 4)

    Petitioner claims he is entitled to habeas corpus relief because his right to due process was violated, in that he was denied timely discovery material, including exculpatory evidence, and was forced to obtain that evidence through administrative and civil proceedings.  In the section of his petition titled "Supporting facts," petitioner recites:

>    Due process mandates that proper discovery is
> provided in a timely manner.  This process was violated
> when the petitioner had to seek out addition[al]
> exculpatory evidence by administrative and civil court
> actions.  Proving violations of the constitutional and
> statutory requirements placed upon the prosecution.

(Pet. at 12.)  The petition does not further identify the discovery materials petitioner claims to have been denied.  Based on other documents in the file, including petitioner's motion for a new trial and his objection to summary judgment, it appears

11

that the discovery material at issue in Ground 2 consists of: (1) material related to the legality of his arrest and, thus, the admissibility of evidence seized from his truck when he was arrested; and (2) material documenting his whereabouts on the day of the crimes which, in his view, would have established an alibi defense.  Respondent argues that the issue raised under Ground 2 was procedurally defaulted or, in the alternative, should be rejected on the merits.


A. Brady v. Maryland

In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963).  As the Court more recently explained, "the three components or essential elements of a Brady prosecutorial misconduct claim [are]: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'"  Banks v. Dretke, 540 U.S. 668, 691 (2004) (quoting Strickler v. Greene, 527 U.S. 281–82 (1999)).  Regarding materiality, the Court has explained:

Our touchstone on materiality is <u>Kyles v. Whitley</u>, 514
U.S. 419 (1995).  <u>Kyles</u> instructed that the materiality
standard for <u>Brady</u> claims is met when "the favorable
evidence could reasonably be taken to put the whole
case in such a different light as to undermine
confidence in the verdict."  514 U.S., at 435.  See
also <u>id.</u>, at 434–435 ("A defendant need not demonstrate
that after discounting the inculpatory evidence in
light of the undisclosed evidence, there would not have
been enough left to convict."); accord <u>Strickler</u>, 527
U.S., at 290.  In short, Banks must show a "reasonable
probability of a different result."  <u>Kyles</u>, 514 U.S.,
at 434 (internal quotation marks omitted) (citing [<u>U.S.
v.</u>] <u>Bagley</u>, 473 U.S. [667,] 678 [(1985)]).

<u>Banks</u>, 540 U.S. at 698–699 (parallel citations omitted).

### B. Material Related to Petitioner's Arrest

Petitioner filed a notice of appeal after his conviction,
including as issues the following:

C.  Whether the Court erred in not granting the
Defendant's requests for a mistrial due to the
State's numerous discovery violations.

F.  Whether the Court erred in allowing alleged
burglary tools to be entered into evidence,
notwithstanding disclosure violations under
Superior Court Rule 98 and NH Rule of
Evidence 404(b).

H.  Whether the Court erred in ruling that the
Defendant's arrest and the search of the
Defendant's truck in New York State and the
seizure of items from the truck was
constitutional and legal and whether there
was a factual basis for those rulings.

K.  Whether the Court erred in failing to require
the State to provide the defense with any and

> all reports or information regarding how the
> alleged burglary tools came into the
> possession of law enforcement.

(Resp't's Mot. Summ. J., Ex. 2, at 3.)  Petitioner addressed two

issues in his supreme court brief:

> The trial court erred by denying Campney's motion in
> limine to exclude physical evidence, when he received
> inadequate discovery of that evidence.
>
> The trial court erred by denying Campney's motion in
> limine to exclude physical evidence when that evidence
> was obtained illegally.

(Resp't's Answer, Ex. 1, at 2.)  Petitioner's brief to the New

Hampshire Supreme Court demonstrates that he sought the discovery

material at issue in his first appeal to establish that his truck

was searched illegally, thus providing grounds, under the Fourth

Amendment, for suppressing evidence recovered during that search.


In its order on petitioner's appeal, the state supreme court

observed that "[t]he defendant properly concedes that the second

issue he raises on appeal has been decided against him in 2004-

542, State v. Randy Campney [petitioner's appeal from his Grafton

County conviction], and therefore should receive no further

consideration."  (Resp't's Answer, Ex. 4, at 1.)  In affirming

the trial court's decision on the first issue, the court

explained:

We will reverse a trial court's decision regarding discovery violations only if the appellant can demonstrate an unsustainable exercise of discretion. State v. Belton, 150 N.H. 741, 745 (2004). To show an unsustainable exercise of discretion, the defendant must demonstrate that the decision prejudiced his case. Id.

As the defendant correctly notes, exclusion of evidence has been characterized as an "extreme" remedy. Id. at 746. The defendant argues that this remedy was warranted here because the late disclosure impaired his ability to present a motion to suppress. He explains in his brief that if defense counsel had access to the full reports before trial, counsel could have filed a motion to suppress that would have made the same claims as the defendant later made in the motion to suppress that he filed in 2004-542, State v. Randy Campney.

The claims raised in the motion to suppress filed in 2004-542, State v. Randy Campney, however, were rejected by the superior court, and we affirmed that ruling on appeal. Therefore, any showing by the defendant that he was prevented from filing the same meritless motion to suppress in the instant case would not demonstrate prejudice to his case.

(Id.)


Based upon the foregoing, two things are clear. First, as it relates to evidence about the circumstances under which physical evidence was seized from petitioner's truck, the Brady issue raised in Ground 2 was not procedurally defaulted; the New Hampshire Supreme Court plainly reached the merits of that claim. Second, however, even if the State did withhold evidence petitioner could have used to attack the legality of the seizure

15

of evidence from his truck, that alone would not establish a
<u>Brady</u> violation.

As the United States Supreme Court stated most recently in
<u>Banks</u>, <u>Brady</u> material is evidence that is exculpatory or
impeaching.  540 U.S. at 691.  The evidence petitioner claims he
was improperly denied is neither exculpatory nor impeaching.
That is, it does not tend to establish his innocence[4] or to
undermine the credibility of any witness who testified against
him.  Thus, it is simply not <u>Brady</u> material.  <u>See</u> <u>Torres v.
Irvin</u>, 33 F. Supp. 2d 257, 276 (S.D.N.Y. 1998) (rejecting habeas
corpus petitioner's claim that informant's "search warrant
affidavit [was] <u>Brady</u> material because if he had it, he could
have shown it was false and hence that there was no probable
cause to search his apartment," terming the claim "at bottom a
Fourth Amendment claim in <u>Brady</u> clothing"); <u>O'Quinn v. Estelle</u>,
574 F.2d 1208, 1209-10 (5th Cir. 1978) (ruling that defendant's
request for evidence to support a motion to suppress did not
implicate due process rights protected by <u>Brady</u> but, rather,
implicated rights protected by the Fourth Amendment, which may
not serve as the basis for habeas corpus relief, under <u>Stone v.

---

[4] "Exculpatory evidence" is "[e]vidence tending to establish
a criminal defendant's innocence."  BLACK'S LAW DICTIONARY 597 (8th
ed. 2004) (citing FED. R. CRIM. P. 16).

Powell, 428 U.S. 465, 494 (1976)).  Thus, to the extent Ground 2
is based on petitioner's claim that he was denied discovery
material concerning his arrest, and the seizure of evidence from
his truck, respondent is entitled to summary judgment, because
petitioner has not raised a Brady claim but, rather, a Fourth
Amendment claim, one that is not cognizable in a habeas
proceeding.

### C. Material Related to an Alibi Defense

Petitioner also bases Ground 2 on the alleged withholding of
evidence that, in his view, would have supported an alibi
defense.  Specifically, he contends that he went to trial
believing that he had to defend himself against charges that he
committed two burglaries during the early morning hours of April
13, and was surprised at trial by testimony from the State's key
witness placing him at a restaurant in Keene during the evening
of April 12.[5]  He says he could have challenged that testimony,
but for the State's failure to provide him with: (1) employment
records and the report of a parole officer's interview with his

_____

[5] At several points, petitioner has argued that he was
surprised by trial testimony that he took off from work early on
April 12, but the trial transcript appears to contain no such
testimony, and certainly contains no such testimony on the pages
to which petitioner directed the trial court considering his
motion for a new trial, which is the only pleading that attempts
to identify the testimony petitioner claims he needed to counter
with alibi evidence.

work-release employer showing that he had worked a full day in New York on April 12; and (2) records documenting his attendance at the "Cohoes Friday Night [Alcoholics Anonymous] Group" meeting.

As with the arrest-and-seizure part of Ground 2, respondent contends that the alibi-defense aspect of Ground 2 was procedurally defaulted.  However, even if there were grounds for the state court to have declared petitioner's alibi-defense <u>Brady</u> claim procedurally defaulted, that claim was revived by the trial court when it denied plaintiff's motion for a new trial on the merits.  <u>See</u> <u>Ylst</u>, 501 U.S. at 801.

Turning, then, to the merits of petitioner's claim, his wife and alleged accomplice, Susan Campney ("Susan"), testified at trial, on direct examination, that on the evening of April 12, she, petitioner, Scott Whitaker, and Rhonda Boardman went to an Applebee's restaurant in Keene, New Hampshire.  (Tr., March 16–17, 2004, at 10.)  On cross-examination, petitioner's counsel elicited the following testimony from Susan:

> Q    So are you saying, then, that that Friday you and
>      Randy had been in – the Friday prior to the
>      burglaries, you had been in New York?
>
> A    Yes.

18

Q     So what time did you leave New York?

A     Probably about five, 6 o'clock.

Q     So you leave New York – what part of New York,
      Cohoes?

A     Cohoes –

Q     Cohoes.

A     – out by Albany, New York.

Q     At 6 o'clock, five, 6 o'clock?

A     Right around there, yeah.

Q     And then you have dinner, right, at Applebee's,
      you claim?

A     We did not have dinner.  We just had a drink.

Q     You just had a drink at Applebee's.  And then
      you're in Keene, the Keene area, stopped by
      the police, according to your statement at 10
      o'clock.

A     Right around there, I believe.

Q     Ten p.m.  And you claim that Randy and Scott
      are out of the car, right?

A     Yes.

Q     Getting into a camouflage outfit.

A     Yes.

(Tr., March 16–17, 2004, at 100-01.)


    It appears that the alibi evidence petitioner claims the

State withheld, but he uncovered after his trial, consists of:

(1) a form from the New York Department of Correctional Services
listing the hours of his work-release job as 8:00 a.m. until 4:30
p.m.; (2) pay stubs from his work-release employer, showing that
he worked two full forty-hour weeks between March 4, 2002, and
March 17, 2002;[6] (3) prison financial records showing that he was
paid for a full week's work for the week including April 12; and
(4) two slips documenting his attendance at the "Cohoes Friday
Night [Alcoholics Anonymous] Group" on April 15, 2002, and April
22, 2002, at 8:30 p.m.[7]  Regarding those various records,
petitioner argues:

> Assuming arguendo that I did know that my work
> record would provide an alibi, some two years after the
> crime I am suppose[d] to reconstruct my work history.
> I learned not only that these records were available
> but that, in fact, a New York State Parole Officer by
> the name of Ralph Santos interviewed my former
> employer.  This report has not ever been turned over
> and all attempts to retrieve it have been denied.  Had
> I known about this interview I would have sought a
> deposition from Santos.

(Pet'r's Obj. to Summ. J., at 5-6.)

---

[6] It is unclear why the State would have better access to
petitioner's pay stubs than he would.  It is also unclear why he
relies on pay stubs from the month before the crimes for which he
was convicted, but that is the evidence he submitted.

[7] While the attendance forms refer to the "Friday Night
Group," the court takes judicial notice of the fact that April 15
and 22, 2002, were Mondays.

In its order denying petitioner's motion for a new trial, in which petitioner raised the issue of the State's failure to produce alibi evidence, the trial court divided its analysis into two sections.  In the first section, it treated the newly discovered evidence as having not been in the possession of the State at the time of trial, applied the state-law rules for obtaining a new trial based upon newly discovered evidence set out in State v. Cossette, 151 N.H. 355, 361 (2004), and State v. Davis, 143 N.H. 8, 11 (1998), and ruled that petitioner failed to meet that legal standard.  That ruling was based, in part, on petitioner's failure to produce some of his allegedly newly discovered evidence to the trial court, thus limiting the court's ability to determine whether that evidence would have substantially affected the outcome of the trial.

In the second section, the court responded to petitioner's claim that the evidence at issue was in the possession of the State at the time of trial, and applied State v. Laurie, 139 N.H. 325, 330 (1995), which it characterized as offering petitioner more protection than the United States Constitution.  In its analysis, the trial court relied upon Laurie for the proposition that "[u]pon a showing by the defendant that favorable, exculpatory evidence has been knowingly withheld by the prosecution, the burden shifts to the State to prove beyond a

reasonable doubt that the undisclosed evidence would not have affected the verdict."  $\underline{Id.}$ at 330 (emphasis added[8]).  The court then found that there was "no evidence that the prosecution knowingly withheld any of the purported newly discovered evidence."  (Resp't's Mot. Summ. J., Ex. 6, at 7.)  Given the phrasing of the court's principal finding, the State's defense to petitioner's discovery claim ($\underline{i.e.}$, that it had disclosed all discovery materials pursuant to Superior Court Rule 98), and the trial court's added emphasis on the word "knowingly" in its quotation from $\underline{Laurie}$, it seems evident that the trial court simply assumed the first element of the $\underline{Brady}$ test rather than actually finding that the evidence at issue was "favorable to the accused, either because it [was] exculpatory, or because it [was] impeaching."  $\underline{Banks}$, 540 U.S. at 691.  Accordingly, as to the first element of the $\underline{Brady}$ test, the trial court's order is not entitled to AEDPA deference but, instead, will be reviewed de novo.  $\underline{See}$ $\underline{Dugas}$, 506 F.3d at 7.

The situation here is further complicated by the fact that in the time since the trial court denied petitioner's motion for a new trial, he appears to have acquired at least some of the

---

[8] Emphasis has been added both in this order $\underline{and}$ by the trial court, in its quotation of $\underline{Laurie}$.  (Resp't's Mot. Summ. J., Ex. 6, at 7.)

records he was unable to produce for the trial court.  But, even if the State had possessed all the disputed evidence, and failed to produce it to petitioner before trial, still, there would have been no <u>Brady</u> violation.  At best, that evidence would have supported an alibi defense so weakly that its absence at trial would not undermine confidence in the verdict, <u>see</u> <u>Banks</u>, 540 U.S. at 698, making that evidence immaterial to guilt or punishment, which excludes it from the category of Brady material, <u>see</u> <u>Brady</u>, 373 U.S. at 87.

     Viewed in the light most favorable to petitioner's argument, his employment records establish that he worked on Friday, April 12, until 4:30 in the afternoon.  That is entirely consistent with Susan's testimony that she and petitioner left Cohoes, New York, heading for New Hampshire, somewhere between five and six in the afternoon on April 12.  Petitioner still appears to lack the report of the parole officer who interviewed his employer, if indeed a report was ever prepared, but because the only claim petitioner makes for that report is that it would verify that he did not take time off from work on April 12, any such report would simply corroborate the pay stubs and prison financial records which tend to prove the same point.  And, again, proof that petitioner worked a full day on April 12 – that is, until 4:30 p.m. – is not at all inconsistent with testimony that he

23

embarked from New York between five and six in the afternoon on
that day.  Furthermore, even accepting the dubious theory that a
demonstrated absence from the April 12 Applebee's rendezvous
would provide petitioner an alibi for burglaries that occurred
during the early morning hours of the following day, proof that
petitioner worked until 4:30 p.m. in Cohoes, New York, is not
inconsistent with Susan's testimony that, at some point earlier
than 10:00 p.m., she and petitioner had drinks in an Applebee's
restaurant in Keene, New Hampshire.

        The allegedly exculpatory Alcoholics Anonymous attendance
slips are also not particularly probative.  While they refer to
the "Friday Night Group," the slips suggest that petitioner
attended meetings at 8:30 p.m. on Monday, April 15, and Monday,
April 22, which is not inconsistent with his being at Applebee's
in Keene before 10:00 p.m. on Friday, April 12, or his
participating in burglaries in Greenville during the early
morning hours of Saturday, April 13.  Moreover, even if
petitioner was in Cohoes at an A.A. meeting until 9:30 p.m. on
April 12, that might cast doubt on Susan's testimony about the
Applebee's rendezvous, but does not demonstrate that petitioner
could not have committed the crimes for which he was convicted.
Thus, proof that petitioner had been in Cohoes until 9:30 p.m. on
April 12 is not exculpatory and is, at best, mildly impeaching on

an ancillary matter.  Given the other evidence of Susan's untruthfulness brought out by the petitioner on cross-examination, proof that she testified untruthfully about the Applebee's rendezvous would have added very little to petitioner's defense.

Because the evidence related to petitioner's alibi defense does not meet the requisite materiality standard, see Banks, 540 U.S. at 698-99, the State's failure to produce that evidence, if established, would not constitute a Brady violation.  Thus, to the extent Ground 2 is based upon petitioner's claim that he was denied discovery material supporting an alibi defense, respondent is entitled to summary judgment.

Ground 3 (original Ground 5)

Petitioner claims he is entitled to habeas corpus relief because he was denied the effective assistance of trial counsel, due to counsel's failure to obtain exculpatory evidence. Respondent again argues that he is entitled to summary judgment on Ground 3 on the basis of procedural default, because petitioner did not raise ineffective assistance of trial counsel in his motion for a new trial.  But, petitioner did raise that issue in his motion to vacate, and respondent has not shown that the state court denied that motion on procedural grounds.  Thus,

25

respondent is not entitled to summary judgment on Ground 3 on the basis of procedural default.

As explained above, however, none of the evidence petitioner says he lacked at trial qualifies as exculpatory, which entirely undermines petitioner's claim that his counsel performed ineffectively by failing to obtain exculpatory evidence. Accordingly, respondent is entitled to dismissal of Ground 3.

Ground 4 (original Ground 6)

Petitioner claims he is entitled to habeas corpus relief because he was denied the effective assistance of appellate counsel.  Respondent argues that he is entitled to summary judgment on Ground 4 on the basis of procedural default, pointing to petitioner's failure to raise ineffective assistance of appellate counsel in his motion for a new trial.  Respondent, who relies upon Avery, 131 N.H. at 142-44, says petitioner procedurally defaulted that issue by failing to raise it at the earliest possible time.

The problem with respondent's procedural default argument is its conception of "earliest possible time."  Obviously, petitioner could not have claimed ineffective assistance of appellate counsel in his direct appeal.  And, it is not at all

26

clear that he could have raised that issue in his motion for a
new trial, which was filed before his direct appeal was decided.
"In order to prevail [on an ineffective assistance claim], a
defendant must show both that counsel's representation fell below
an objective standard of reasonableness and that there exists a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008)
(citing Strickland v. Washington, 466 U.S. 668, 688 (1984)).
Because there was no result in petitioner's direct appeal until
after he filed his motion for a new trial, a request for relief
based upon ineffective assistance of appellate counsel would have
been premature at the time petitioner filed that motion.
Moreover, as with Grounds 1, 3, and 6, petitioner did raise
ineffective assistance of appellate counsel in his motion to
vacate, and respondent has not shown that the state court denied
that motion on procedural grounds.  Accordingly, respondent is
not entitled to summary judgment Ground 4 on the basis of
procedural default.


Ground 5 (original Ground 7)

     Petitioner claims he is entitled to habeas corpus relief
because of the prosecution's misconduct in: (1) failing to
provide discovery; and (2) misleading the trial court "on several

27

crucial and material facts." (Pet. at 18.) To the extent Ground 5 raises a <u>Brady</u> claim, respondent is entitled to summary judgment for the same reasons he was granted summary judgment on Ground 2.

Regarding the alternate theory on which Ground 5 is based, prosecutorial misrepresentation, respondent argues that he is also entitled to summary judgment on basis of procedural default. Again, because that claim was raised in petitioner's motion to vacate, which was not denied on procedural grounds, respondent is not entitled to summary judgment on Ground 5 on the basis of procedural default.

Petitioner's prosecutorial misrepresentation claim, as elaborated in his motion to vacate is, however, plainly without merit. The "crucial and material facts" petitioner claims the prosecutor misrepresented appear to have concerned the content of various videotapes that Susan Campney claimed she had taken from petitioner and that purported to show him engaging in other unrelated burglaries. But those alleged misrepresentations took place at a pre-trial motion hearing, rather than before the jury at trial, and the videotapes themselves were never introduced into evidence at Campney's trial. Thus, the prosecutor's characterization of those videotapes – accurate or not – had no

bearing on the fairness of petitioner's trial.  Because
petitioner does not state a prosecutorial misconduct claim of
constitutional dimension, respondent is entitled to dismissal of
Ground 5.


Ground 6 (original Ground 8)

     Petitioner claims he is entitled to habeas corpus relief
because he was denied the right to a fair trial when the trial
court "sought out a theory of arrest" that was not supported by
the court record or set forth by the prosecution.  Respondent
again counters that he is entitled to summary judgment on the
basis of procedural default, because petitioner did not raise his
"theory of arrest" claim in his direct appeal.  Because
petitioner did raise that issue in his motion to vacate, however,
and respondent has not shown that the state court denied that
motion on procedural grounds, respondent is not entitled to
summary judgment on the basis of procedural default.  But,
respondent is entitled to dismissal of Ground 6 because that
claim is entirely meritless.  The legality of petitioner's arrest
goes to a potential Fourth Amendment violation, and, as explained
above, Fourth Amendment violations are not cognizable in the
habeas context.  See Stone, 428 U.S. at 494.

Ground 7 (original Ground 10)

Petitioner claims he is entitled to habeas corpus relief because the trial errors identified in Grounds 1 through 6 denied him the right to cross-examination, the right to effective assistance of trial and appellate counsel and the right to due process.  Respondent argues that he is entitled to summary judgment on Ground 7 on the basis of procedural default.

By its own terms, Ground 7 is derivative of Grounds 1 through 6, four of which have been dismissed.  What remains of the case is petitioner's IAD claim (Ground 1) and his ineffective assistance of appellate counsel claim (Ground 4).  Because Ground 7, fairly read, includes no claim beyond those stated in Grounds 1 and 4, it is dismissed as duplicative.

**Conclusion**

For the reasons given, respondent's motion for summary judgment (document no. 30) is granted in part and denied in part. On the grounds asserted in the motion and those apparent from the record, respondent is entitled to judgment as a matter of law on Grounds 2, 3, 5, 6, and 7.  Regarding Grounds 1 and 4, respondent is not entitled to summary judgment on the basis of procedural default, the only argument he has advanced.  Other grounds may

30

exist, but are not plainly supported by the record as it stands, or were not developed and argued.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 26, 2008

cc:  Randy S. Campney, Sr., <u>pro</u> <u>se</u>
     Stephen D. Fuller, Esq.
     John Vinson, Esq.